THE STATE, EX REL. MCINTYRE ET AL., APPELLEES, *v.*
MININNI ET AL., FRANKLIN COUNTY BOARD OF ELECTIONS,
APPELLANTS.

[Cite as State, ex rel. McIntyre, v. Mininni (1972),
32 Ohio St. 2d 17.]

(No. 72-722—Decided October 25, 1972.)

18

*Messrs. Graham & Dutro, Mr. James L. Graham, Messrs. Vorys, Sater, Seymour & Pease* and *Mr. John W. Hoberg,* for appellees.

*Mr. George C. Smith,* prosecuting attorney, and *Mr. William B. Shimp,* for appellants.

O'NEILL, C. J. R. C. 3513.23 provides:

"If an elector voting at a primary election writes in a blank space provided therefor on the ballot of one political party under the title of an office for which a nomination is to be made the name of a person other than the persons whose names are printed on the ballot as candidates for such nomination, and if such elector places 'X' in the rectangular space at the left of the name written, such ballot shall be counted as a vote for the nomination of the person whose name is written thereon, but in no event shall a person, whose name is written on a primary election ballot, be nominated as a candidate for election to an office if the name of no person living on the day of such primary election is printed on such ballot as a candidate for such nomination, unless the total number of votes cast for the person whose name is written on the ballot is not less than that number which is equal to fifteen per cent of the total number of electors who vote such primary election ballot at such primary election."

As disclosed in the agreed statement of facts, relator McIntyre failed to receive "that number [of votes] which is equal to fifteen per cent of the total number of electors who vote such primary election ballot * * *."

Thus, if R. C. 3513.23 is constitutionally valid, the board of elections properly denied relator's requests for a certificate of nomination and for the placing of his name on the ballot at the general election.

It is relator's position, however, that R. C. 3513.23 violates the Equal Protection Clause of the Ohio Constitu-

tion (Section 2, Article I), and the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States.

In *Williams* v. *Rhodes* (1968), 393 U. S. 23, the Supreme Court of the United States held that Ohio election statutes requiring new political parties seeking ballot positions in presidential elections to obtain petitions signed by qualified electors totaling 15 percent of the number of ballots cast in the last gubernatorial election created invidious distinctions and were violative of the Equal Protection Clause because they gave established parties an advantage over new parties.

In the course of the opinion in *Williams*, the court said, at page 30:

"We turn then to the question whether the court below properly held that the Ohio laws before us result in a denial of equal protection of the laws. It is true that this court has firmly established the principle that the Equal Protection Clause does not make every minor difference in the application of laws to different groups a violation of our Constitution. But we have also held many times that 'invidious' distinctions cannot be enacted without a violation of the Equal Protection Clause. In determining whether or not a state law violates the Equal Protection Clause, we must consider the facts and circumstances behind the law, the interests which the state claims to be protecting, and the interests of those who are disadvantaged by the classification. In the present situation the state laws place burdens on two different, although overlapping, kinds of rights—the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively. Both of these rights, of course, rank among our most precious freedoms. * * * "

While the statutes declared unconstitutional in *Williams* required a new party to obtain petitions signed by electors totaling 15 percent of the number of ballots cast in the last gubernatorial election, the Republican and Dem-

ocratic parties faced, as noted in the opinion, "substantially smaller burdens" in that they were "allowed to retain their positions on the ballot simply by obtaining 10% of the votes in the last gubernatorial election and need not obtain any signature petitions." (*Id*, page 25.)

Under R. C. 3513.23, a write-in candidate is required to receive 15 percent of the "total number of electors who vote" the primary election ballot in order to be nominated, while a candidate whose name is printed on the ballot is not required to receive any set percentage of votes in order to be nominated. Thus, the distinction between classes found in R. C. 3513.23 is greater than the distinction held to be unconstitutional in *Williams*.

Another factor to be considered in light of *Williams* is the "right of qualified voters * * * to cast their votes effectively."

As the Court of Appeals pointed out in its opinion, application of R. C. 3513.23 denies the electors who voted for relator "* * * the effectiveness of their votes, not because the candidate for whom they voted did not receive the highest number of votes, but because they were insufficient in number to meet the 15 percent requirement of R. C. 3513.23."

We note here that relator received in excess of ten percent of the vote of the "total number of electors" who voted the primary election ballot, that he received more votes than would have been required to have his name printed on the primary ballot pursuant to R. C. 3513.05, and that he "is in all other respects qualified to be a candidate at the next general election for the office of State Representative * * *."

We are of the opinion that, in light of the decision in *Williams* v. *Rhodes, supra* (393 U. S. 23), R. C. 3513.23, to the extent that it requires write-in candidates at primary elections to receive that number of votes which is equal to 15 percent of the total number of electors who vote such primary election ballot, creates invidious distinctions between write-in candidates and candidates whose names are

printed on the ballot. Where there are no names printed on the ballot for an office at a primary election, a write-in candidate receiving the most votes for that office who receives more votes than would have been required to have his name printed on the primary ballot pursuant to R. C. 3513.-05 is entitled to have his name placed on the ballot at the general election.

The judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

SCHNEIDER, HERBERT, CORRIGAN and STERN, JJ., concur. LEACH and BROWN, JJ., dissent.

LEACH, J., dissenting. In *Williams* v. *Rhodes* (1968), 393 U. S. 23, relied upon by the majority, the *only* method a new party had of obtaining a place on the Ohio ballot was by filing petitions signed by electors totaling 15 percent of the number of ballots cast in the last gubernatorial election. Here, Craig McIntyre, as provided by R. C. 3513.-05, could have had his name placed on the primary ballot by the relatively simple process of filing a petition signed by 100 qualified electors of the district who were members of the Republican Party; in which event the 15 percent requirement of R. C. 3513.23 would have had no application, either to McIntyre or any write-in opponent of McIntyre.

In my opinion, the legislative decision to require a 15 percent vote for qualification for placement on the November ballot where no name of a living person appears on the May ballot, even if unwise as a matter of policy, does not unconstitutionally discriminate against write-in candidates in favor of candidates whose names might have been but were not on the ballot. A write-in candidate, allegedly discriminated against, could have easily qualified for a place on the printed primary ballot.

BROWN, J., concurs in the foregoing dissenting opinion.