[Civ. No. 52688. Second Dist., Div. Five. July 31, 1978.]

LAWRENCE KELLAM et al., Plaintiffs and Respondents, v.
MARCH FONG EU, as Secretary of State, etc.,
Defendant and Appellant.

**COUNSEL**

Evelle J. Younger, Attorney General, Iver E. Skjeie, Assistant Attorney General, and Henry G. Ullerich, Deputy Attorney General, for Defendant and Appellant.

Sills, Dougherty & Hendrickson and Ray Hendrickson for Plaintiffs and Respondents.

**OPINION**

**HASTINGS, J.**—Petitioner Lawrence Kellam (Kellam) sought the office of Assemblyman from the 44th District in the special primary election held May 31, 1977, as an independent candidate.[1] He was informed by the Registrar-Recorder for the County of Los Angeles that he must obtain 500 valid signatures of registered voters from the 44th Assembly District

---

[1]Kellam had been nominated by the Libertarian Party. This political party was an unqualified party in California at the time; therefore, Kellam is classified as an independent candidate. Other registered voters joined Kellam as petitioners on the writ of mandate.

before his name could be placed on the ballot. He subsequently submitted petitions to the registrar, who found only 456 signatures valid and therefore declined to certify Kellam's candidacy. Petitioners then filed their petition for writ of mandate in the Los Angeles Superior Court, contending that the Secretary of State had erred in interpreting California Elections Code section 7201 as ultimately requiring independent candidates for a special primary election to submit 500 valid signatures pursuant to Elections Code section 6831, while qualified party candidates need submit only 40 signatures. In the alternative, petitioners claimed that relevant statutory provisions for special elections are unconstitutional, if the interpretation by respondent was allowed to stand, in that section 6831 discriminates against independent candidates. An alternative writ of mandate was issued, and Kellam's name was placed on the May 31 special primary ballot. After hearing, the peremptory writ was granted, and defendant appeals from the judgment.

■ 1. Both parties urge that the matter, as it relates to the Elections Code, should not be dismissed as moot. We agree. While it is true that the special election from which this case arises is long past, this does not preclude consideration of the general legal questions at issue here. (*Gould v. Grubb,* 14 Cal.3d 661, 666, fn. 5 [122 Cal.Rptr. 377, 536 P.2d 1337].) The interpretation of the Election Code procedure involved in this litigation is a question of general public interest and one which is likely to recur. Consequently, the issue presented can be decided in this court. (*Green* v. *Layton,* 14 Cal.3d 922, 925 [123 Cal.Rptr. 97, 538 P.2d 225]; *Knoll* v. *Davidson,* 12 Cal.3d 335, 344 [116 Cal.Rptr. 97, 525 P.2d 1273].)

2. Special elections are provided for in the California Elections Code commencing with section 7200. Included in these sections are provisions for a special primary election, which differs fundamentally from the primary for a regular general election in two respects: First, all candidates of whatever affiliation are grouped on a single ballot; and second, if any one candidate in the special primary receives a majority of the votes cast, "he shall be declared elected, and no special general election shall be held." (Elec. Code, § 7202.) It is obvious that with this format there are no restrictions on cross-party voting in the primary. Thus, what occurs in a special primary election is actually in effect a preliminary general election with all candidates on a single ballot, and a subsequent "runoff" general election is held only if one of these many candidates does not receive a majority on the first ballot. Qualifications for nomination to the special primary ballot are set forth in Elections Code section 7201, which provides in part: "Candidates at the primary

election shall be nominated in the manner set forth in Chapter 5 (commencing with Section 6400). . . ." The fifth chapter of the Elections Code is the chapter dealing with direct primaries. Section 6401 describes the means whereby political party members may petition to be included on the direct primary ballot, and section 6402 then speaks to independent nominees, providing that "[t]his chapter does not prohibit the independent nomination of candidates under the provisions of Chapter 6 (commencing at Section 6800). . . ." Section 6831 of chapter 6, which is the chapter on independent nominations, states that independent nominees for state assemblyman shall be nominated by submitting petitions "signed by voters in the district not less in number than 500 or 1 percent of the entire vote cast . . . nor more than 1,000." The Secretary of State contends that this is the method of nomination intended by the Legislature in its original section 7201 reference to Elections Code chapter 5.

Petitioners argued in the superior court that because special primaries differ so fundamentally from direct primaries, the Legislature cannot have intended by its cryptic reference to chapter 5 to have included the chapter 5 reference to chapter 6. They contend rather that the specific provisions of section 6495 in chapter 5 were intended to apply to all candidates in a special primary. Section 6495, which applies indisputably only to qualified party members in a direct primary and which the Secretary of State applies to qualified party candidates in a special primary as well, provides that "[t]he number of signers to a nomination paper required for the respective offices are [*sic*] as follows: . . . (b) . . . State Senate or Assembly . . . not less than 40 nor more than 60." The trial court agreed with this argument in granting the writ of mandate and the constitutional issue was avoided.

We conclude the trial court erred. The logical reading of the section 7201 reference to "Chapter 5 (commencing with § 6400)" is to incorporate all of chapter 5 in the order as written. Since chapter 5 does not describe the details of qualifying as an independent candidate and if it is assumed that a person has a right to qualify by that route, many of the provisions of chapter 6 are essential. For example, a person is barred from running as both an independent and seeking the candidacy of a qualified party (§ 6801); random sampling of signatures (§ 6831.1); how to count signatures (§ 6834); form of nomination paper (§ 6838); where signatures can be obtained (§ 6862); and affidavit of candidates (§ 6920). All sections must be applicable to the independent nominees. Similarly, section 6831 is applicable. This interpretation coincides with the Secre-

tary of State's; therefore, Kellam was required to obtain 500 signatures while members of a qualified party needed only 40.

■ 3. The above conclusion requires us to address the constitutional issue. Petitioners claim that the statutes as applied by the Secretary of State unfairly discriminate against all who are not members of a qualified political party and who wish to run for office in a special election. This, they assert, is in direct violation of the equal protection of the laws guaranteed them by both the California and the United States Constitutions. We disagree.

■ In determining whether such a violation does exist, both state and federal interpretations of the equal protection guarantee that a citizen not be restrained from casting his vote effectively, require that we consider three factors: The facts and circumstances behind the law, the interests which the state claims to be protecting, and the interests of those who are disadvantaged by the classification. (*Williams* v. *Rhodes,* 393 U.S. 23, 30 [21 L.Ed.2d 24, 31, 89 S.Ct. 5].)

At the time of this writing there are four qualified political parties in California; namely, Democratic, Republican, Peace and Freedom, and American Independent. Unless a person is a member of one of these parties, he or she must run as an independent. A member of a qualified party does not need to go through the laborious signature-gathering required of nonqualified party candidates. All candidates must demonstrate substantial voter support in order to appear on any California ballot and registration in a qualified political party is a legitimate means for meeting this criterion. The United States Supreme Court observed that "we think that the State's admittedly vital interests are sufficiently implicated to insist that political parties appearing on the general ballot demonstrate a significant, measurable quantum of community support. So long as the larger parties must demonstrate major support among the electorate at the last election, whereas the smaller parties need not, the latter, without being invidiously treated, may be required to establish their position in some other manner." (*American Party of Texas* v. *White,* 415 U.S. 767, 782-783 [39 L.Ed.2d 744, 761, 94 S.Ct. 1296].) In a case decided the same day as *American Party,* and which involved California election law, the court recognized that "as a practical manner, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." (*Storer* v. *Brown,* 415 U.S. 724, 730 [39 L.Ed.2d 714, 723, 94 S.Ct. 1274].) Recognizing and providing for the obvious

differences between an established political party with broad public support and a newly formed political organization whose support is not proven, is one way for the state to contain the size of its ballots and to ensure fair choice. It does not of itself result in an infringement of equal protection rights. (*Jenness* v. *Fortson,* 403 U.S. 431 [29 L.Ed.2d 554, 91 S.Ct. 1970].)

◼ While we recognize the importance of free expression of divergent views on the ballot and elsewhere, we find that the statutory provisions at issue here do not operate to unduly restrict this expression. Significantly, the court went on in *American Party* to caution that "what is demanded may not be so excessive or impractical as to be in reality a mere device to always, or almost always, exclude parties with significant support from the ballot." (415 U.S. at p. 783 [39 L.Ed.2d at p. 761].) The 500 signatures requirement of California law has not been demonstrated to operate in any way as a denial of the constitutionally guaranteed right to appear on the special primary election ballot. It is rather the implementation of this state's legitimate desire that its elections represent a fair choice and that its ballots maintain manageable proportions. In addition, it is not disputed that those candidates who fail to meet the signature requirements of section 6831 have write-in candidacy available to them. While any fixed percentage will be by definition arbitrary, the present requirement of 500 signatures or 1 percent of the electorate cannot be deemed an excessive requirement for demonstrating a popular political base in an assembly district which at the last special primary election cast a total of 48,130 votes. We therefore find that the special elections provisions at issue do not violate petitioners' right to equal protection of the laws.

The judgment is reversed.

Kaus, P. J., and Ashby, J., concurred.