Percy L. GREAVES et al., Plaintiffs,

v.

Frances Jones MILLS et al., Defendants.

John B. ANDERSON et al., Plaintiffs,

v.

Frances Jones MILLS et al., Defendants.

Civ. A. Nos. 80–17, 80–18.

United States District Court,
E. D. Kentucky,
London Division.

Aug. 14, 1980.

Alan E. Sears, Theodore H. Amshoff, Jr., Amshoff & Amshoff, Louisville, Ky., for plaintiffs in No. 80–17.

C. Thomas Anderson, Legal Counsel, State Board of Elections, Patrick B. Kimberlin III, Asst. Atty. Gen., Frankfort, Ky., for defendants.

David R. Boyd, Rogovin, Stern & Huge, Washington, D. C., C. William Swinford, Jr., Lexington, Ky., Donald L. Gulick, Porter & Gulick, Louisville, Ky., for plaintiffs in No. 80–18.

## MEMORANDUM OPINION

SILER, District Judge.

In Civil Action No. 80–18 (hereinafter "Anderson case"), plaintiff, John B. Anderson, a citizen and Congressman from Illinois, is an independent presidential candidate seeking to be placed on the ballot in the November general election in Kentucky. Other plaintiffs are Joseph C. Graves, Jr., a citizen of Kentucky, and a person who is pledged to be an elector for Congressman Anderson in his presidential race; and Gerald M. Eisenstadt, a citizen of New Jersey, and a supporter of Anderson for President.

In Civil Action No. 80–17 (hereinafter "Greaves case"), plaintiff Percy L. Greaves is a citizen of New York and is also an independent presidential candidate, seeking to be placed on the ballot in November. Other plaintiffs are Dr. Wasley Krogdahl,

Margaret Krogdahl, and Robert Vessels, all citizens of Kentucky, and supporters of Greaves for President. Dr. Krogdahl also seeks to have his name placed as an elector for plaintiff Greaves for President.

The defendants in both cases are Frances Jones Mills, the Secretary of State, and members of the State Board of Elections. In addition, in Civil Action No. 80–17, Brady A. Miracle, the Executive Director of the Board of Elections, is a party defendant. The responsibility of Mrs. Mills and the Board of Elections is to administer elections in Kentucky, and to issue certificates of election for successful candidates. KRS Chapters 117–118. Petitions and certificates for nomination for electors of President and Vice President of the United States are to be filed with the Secretary of State. KRS 118.365(4).

The two cases have been consolidated pursuant to Rule 42(a), Federal Rules of Civil Procedure, and have come before the Court on cross motions for summary judgment. The Court commends the parties for their diligence in getting the record ready for a decision, especially in their stipulation of the facts. As there does not appear to be any genuine issue of material fact, this is an appropriate case for summary judgment under Rule 56, Federal Rules of Civil Procedure. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

## ANDERSON'S CASE

Congressman Anderson originally was a candidate for the Republican nomination for President. However, on April 24, 1980, he announced publicly his intention to withdraw as a Republican candidate and to run as an independent. He attempted to have his name stricken in the Republican primary, but the Secretary of State said his withdrawal was untimely, and he was defeated in the Kentucky Republican primary on May 27, 1980, by Ronald Reagan. This Court denied him preliminary relief to be stricken from the ballot. *See Anderson v. Mills*, 491 F.Supp. 1231 (E.D.Ky.1980).

On May 27, 1980, Anderson's supporters presented to the Secretary of State a petition for his name to be placed on the ballot in November and to name qualified electors for him and a candidate for Vice President. The petition complied with the requirements of KRS 118.315, including 8600 names thereon. However, the Secretary of State rejected it as being untimely. She maintained that the petition had to be filed on or before April 2, 1980, in accordance with KRS 118.365(3); and that Anderson was disqualified under the "sore loser" law, KRS 118.345, as he had been defeated in the primary election.

## GREAVES' CASE

In the companion case involving Percy L. Greaves, his supporters on April 1, 1980, presented to the Secretary of State a petition for his placement on the November ballot. This petition was also legally sufficient in all respects save one, at least according to the Secretary of State. Whereas the Anderson petition had a sufficient number of signatures but was untimely, this petition for Greaves was timely but had an insufficient number of signatures. It had 1,086 signatures, thus short of the 5,000 required under KRS 118.315(2).

## RELIEF SOUGHT

Although the Anderson case was originally brought under the diversity jurisdiction of this Court, pursuant to 28 U.S.C. § 1332 (as Anderson was then the only plaintiff), the complaint was subsequently amended. Both cases now seek injunctive and declaratory relief under 28 U.S.C. §§ 1331, 1343(3) and 2201–02, incorporating 42 U.S.C. § 1983. The plaintiffs in the Greaves case also assert their rights under 28 U.S.C. § 2284 and 42 U.S.C. § 1982, but the Court finds those statutes inapplicable.

Nevertheless, this Court has jurisdiction of the matter under 28 U.S.C. §§ 1343(3) and 2201–02, incorporating 42 U.S.C. § 1983. There might be some question of this Court's jurisdiction under 28 U.S.C. § 1331, inasmuch as there must be $10,000 in controversy. In the Anderson case, there

is *proof of more than that amount* in controversy, *see Anderson v. Mills, supra,* but in the Greaves case, there is not. Therefore the Court will decline to rule on that issue, for jurisdiction is already predicated under 28 U.S.C. § 1343.

Plaintiffs seek to redress rights under various parts of the Constitution, including Article II, Section 1, Article IV, Article VI, and the First, Fifth, Ninth, Twelfth, and Fourteenth Amendments. Both candidates desire the Secretary of State to be directed to place their names on the November general election ballot.

## ABSTENTION

The first issue to be reached is whether this Court should abstain from deciding the case until a state court is allowed to pass on the issue of state law, under the rule from *Railroad Commission v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Assuming there was time to obtain relief in a state court, the issues in this case seem appropriate for abstention. There is ample uncertainty in the state law involved here, as will be seen *infra,* and a decision by a state court that KRS 118.365(3) and 118.345 are not applicable to presidential elections would obviate the need to consider most, if not all, of the constitutional issues here.

■ The rule favoring abstention is based upon a need for courts to avoid decisions of constitutional issues whenever possible. *See Siler v. L. & N. R.R.,* 213 U.S. 175, 29 S.Ct. 451, 53 L.Ed. 753 (1909). Thus, where, as here, the challenged state statute is susceptible of an interpretation by the state courts that would avoid the federal constitutional question, then abstention is appropriate. *See Babbitt v. United Farm Workers National Union,* 442 U.S. 289, 306, 99 S.Ct. 2301, 2313, 60 L.Ed.2d 895 (1979).

■ On the other hand, time here is of the essence. Political campaigns are not started like a motor vehicle. They require time to organize and raise funds. If this Court were to abstain now in favor of a state proceeding, the parties might not obtain more than a decision of a state circuit

court, as an appeal would not be likely completed before November. There are, as of the time of this opinion, fewer than 90 days remaining until the general election in November. Although the time for abstention here is not as short as in *Kay v. Austin,* 621 F.2d 809 (6th Cir. 1980), nevertheless, the same reasoning applies here, precluding abstention. Moreover, it is doubtful whether the issue raised by Greaves concerning the requirement of 5000 signatures on the ballot, could be decided in any way under state law without raising a constitutional question. Therefore, the Court declines to abstain under the circumstances of these cases.

## STATE STATUTES

■ When the constitutionality of a state statute is brought into question, if the Court can decide it on other than constitutional grounds, it should do so. *See Siler v. L. & N. R.R., supra.* Moreover, if the constitutionality of a statute is challenged, the Court should try not to destroy it but to construe it, if consistent with the will of the legislature, so as to comport with constitutional limitations. *United States Civil Service Commission v. National Association of Letter Carriers,* 413 U.S. 548, 571, 93 S.Ct. 2880, 2893, 37 L.Ed.2d 796 (1973); *Kay v. Austin, supra.*

1. *Filing Deadline.*

■ KRS 118.365(4) provides in part:
Petitions and certificates of nomination for electors of President and Vice President of the United States shall be filed with the secretary of state not less than fifty–five (55) days prior to the date fixed by law for the election of such electors.

That language clearly says petitions for presidential electors are to be filed on or before 55 days preceding the November general election. Otherwise, the use of the word "petition" would be considered as surplusage, as maintained by the defendants. All parties readily admit that the major parties, Republicans and Democrats, do not nominate their candidates until July and

August. Thus, the language in this statute about "certificates of nomination" clearly applies to the procedures for nomination by convention applicable to party candidates under KRS 118.325(2).

■ Defendants argue that KRS 118.365(3) applies not only to other candidates but to presidential candidates as well. If the legislature intended that result, it could have easily omitted the word "petitions" in subsection (4) of that statute. Therefore, subsection (4) applies to presidential candidates, so petitions which are otherwise legally sufficient must be accepted by the Secretary of State when filed not less than 55 days before the general election.

■ Although defendants cite *Pratt v. Begley*, 352 F.Supp. 328 (E.D.Ky.1970) (three–judge court), *aff'd*, 409 U.S. 943, 93 S.Ct. 282, 34 L.Ed.2d 214 (1972), in support of their argument that the earlier deadline of April 2 is not unconstitutional, that case is not applicable here. It involved the filing deadline for members of Congress and did not concern this specific provision, KRS 118.365(4), for President. Thus, that deadline for congressional candidates put independent candidates on the same time table as party candidates. Here, as party candidates do not have to be named until a date 55 days before the general election, it is only logical to believe that it is the same deadline required for independent candidates.

## 2. *"Sore Loser" provision.*

■ The "sore loser" provision of KRS 118.345 does not apply to presidential candidates. It provides in part as follows:

(1) No candidate who has been defeated for the nomination for any office in a primary election shall have his name placed on voting machines in the succeeding regular election as a candidate for the same office for the nomination to which he was a candidate in the primary election, except that if a vacancy occurs in the party nomination for which he was a candidate in the primary election his name may be placed on voting machines for the regular election as a candidate of

that party if he has been duly made such party nominee after the vacancy occurs as provided in KRS 118.105.

A New Mexico statute somewhat similar to this law was held inapplicable to the presidential election there. *See Anderson v. Hooper*, 498 F.Supp. 905 (D.N.M.1980). Apart from that decision, however, the language of the Kentucky statute is clearly not applicable to presidential elections, for the candidate is not defeated in Kentucky in the primary election. Defeat only comes at the convention. To decide otherwise might preclude the ultimate nominee at the convention from appearing on the general election ballot, if he lost the Kentucky primary election. Obviously, that result was never intended by the Kentucky General Assembly.

Moreover, as all parties agree, the "sore loser" law was in effect for some time before the presidential primary election law was enacted in Kentucky in 1976. Although KRS 118.345 was amended in 1974, when the presidential primary law, KRS 118.550 et seq., was passed, there is no legislative history to demonstrate that the Kentucky legislature meant to include presidential candidates under KRS 118.345. The defendants here have agreed that Kentucky law does not specifically contemplate independent candidates for President.

## 3. *Signature Requirement.*

■ KRS 118.315(2) provides:

A petition of nomination for a state officer, or any officer for whom all the electors of the state are entitled to vote, shall contain five thousand (5,000) petitioners; .... The petition shall state . . . that he [the candidate] is legally qualified to hold the office, and that the subscribers desire, and are legally qualified, to vote for the candidate.

Before 1978, the law required only 1,000 signatures for a state–wide office. Plaintiff Anderson is not concerned with this statute, for his petition had more than 5,000 signatures. However, the plaintiffs in the Greaves case maintain that this statute vio-

lates rights under the First, Fifth and Fourteenth Amendments to the Constitution. Specifically, they assert that it infringes upon their right to association and expression, denies them equal protection of the law, and denies them their right of franchise without due process of law. They do not allege any specific Fifth Amendment violations, however, and the Court finds none.

This statute cannot be interpreted so as to avoid the constitutional issue; it clearly applies to an independent candidate for President. The requirement of 5,000 signatures is clearly constitutional. This number of voters necessary to sign the petition is less than one per cent (actually about 0.03%) of the eligible pool of voters in Kentucky. In addition, there are no geographical limitations, closed–in time limitations, or requirements for the persons signing the petition, except that they be qualified voters who assert that the candidate is qualified and they desire to vote for him. This statute has apparently not been unduly restrictive for Congressman Anderson, or third–party candidates for the Libertarian Party, Respect for Life Party, Socialist Workers Party, Citizens Party, and the Communist Party. They have filed petitions with more than 5,000 signatures each, even though some of them have not appeared on the Kentucky ballot before, and some of those better known, such as the Socialist Workers Party and the Communist Party, have received fewer from 1,000 votes in the last two presidential elections in Kentucky.

There is ample authority for upholding a minimum petition requirement such as this. In *Jenness v. Fortson*, 403 U.S. 431, 91 S.Ct. 1970, 29 L.Ed.2d 554 (1971), the Georgia law requiring the signatures of five per cent of the total eligible electorate was upheld and determined not to violate the freedoms of speech and association guaranteed under the First and Fourteenth Amendments. Moreover, the Court held that this law did not deny nonparty candidates equal protection of the laws under the Fourteenth Amendment. The state has an interest in requiring "some preliminary showing of a significant modicum of support," *id.* at 442, 91 S.Ct. at 1976, before placing the name of the candidate on the ballot, if for no other reason, to avoid "confusion, deception and even frustration of the democratic process at the general election." *Id. Accord, American Party of Texas v. White*, 415 U.S. 767, 94 S.Ct. 1296, 39 L.Ed.2d 744 (1974) (upholding a requirement of 1% of the vote cast for governor in the last general election). Unlike *Storer v. Brown*, 415 U.S. 724, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974), there is no disqualification here of a person who voted in the primary. Under Kentucky law, one is disqualified if he or she signed another petition for the same office, but the defendants do not check petitions for this and have not asserted this as a bar to any petition filed here.

Plaintiffs in the Greaves case also say that the signature requirement statute is unconstitutional because those signing the petition must express their desire to vote for the named candidate. They maintain that this is not required for party candidates, and that it forces persons to reveal their support for a candidate, thus violating their right to a secret ballot and their freedoms guaranteed under the First and Fourteenth Amendments. This is a unique argument, and the parties have cited no authority in support of it. The Court finds that those signing this petition do little more than those signing other petitions, less indicative of their voting preferences, such as those found in California law in *Storer v. Brown, supra*, or Texas law, in *American Party of Texas v. White, supra*. The same compelling state interest that existed in those cases exists here and is sufficient to uphold the requirement of 5,000 signatures. As there is still some time to act, plaintiff Greaves and his supporters may still be able to get on the November ballot, if they can obtain the additional signatures for their petition.

The Court has considered the learned opinions from *Anderson v. Morris*, 500 F.Supp. 1095 (D.Md.1980); and *Anderson v. Celebrezze*, 499 F.Supp. 121 (S.D. Ohio

1980). Although they are persuasive, they are inapplicable because they decided constitutional issues that were not reached here. Moreover, the constitutionality of the signatures requirement was not decided in those cases.

Therefore, the Court will order the defendant Secretary of State to place the name of John B. Anderson on the general election ballot this November, but will not order the placement of Percy L. Greaves on the ballot , unless by the deadline specified in KRS 118.365(4), that is, 55 days before the general election, he presents a petition to the Secretary of State with the requisite number (5,000) of qualified signatures thereon. An Order in accordance with this Opinion will be issued.