[Civ. No. 52537. First Dist., Div. Two. Apr. 26, 1982.]

RUSSELL E. FRIDLEY, Plaintiff and Appellant, v.
MARCH FONG EU, as Secretary of State, etc., et al., Defendants and
Respondents.

**COUNSEL**

Sills, Dougherty & Hendrickson, Ray Hendrickson and John K. Cotter for Plaintiff and Appellant.

Richard B. Maness and William P. Yee for Defendants and Respondents.

**OPINION**

SMITH, J.—Russell Fridley appeals from a judgment denying his petition for a peremptory writ of mandate. Appellant had sought the writ to compel respondents, the Secretary of State of California and the Registrar of Voters of Santa Clara County, to place his name on the general election ballot of November 4, 1980, as a candidate of the Libertarian Party for the office of state assemblyman for the 22d district.[1] The action challenged the constitutionality of Elections Code section 6661, subdivision (a), which required appellant, as a write-in candidate in his party's primary election, to receive at least 1 percent of the votes cast for the office sought at the preceding general election in which the office was filled.[2]

Having missed the deadline for the filing of nomination papers, appellant campaigned for the nomination in question as a write-in candidate. At the primary election held on June 3, 1980, appellant received 81 writein votes of 386 votes cast. At that time, there were 735 registered Libertarians residing within the boundaries of appellant's as-

---

[1]The Libertarian Party became a qualified party, registered to participate in the primary elections of this state, in December 1979, pursuant to Elections Code section 6430, subdivision (b).

[2]Elections Code section 6661, subdivision (a) provides: "No person whose name has been written in upon a ballot for an office at the direct primary may have his name placed upon the ballot as a candidate for that office for the ensuing general election unless one of the following statements is true: [¶] (a) At that direct primary he received for that office votes equal in number to 1 percent of all votes cast for the office at the last preceding general election at which the office was filled."

Hereinafter, all references will be to the Elections Code.

sembly district. Since 903 represented the figure that was equal to 1 percent of the votes cast for the office in question at the last preceding election, appellant could not have qualified to appear on the general election ballot even if he had received the vote of each registered Libertarian residing in his district. In his petition, appellant alleged that there were no candidates for the office in question on the primary ballot and that he received more votes than any other write-in candidate.

Appellant contends on appeal that, in imposing a requirement which is either impossible to meet or unduly burdensome upon write-in candidates for minor party primary elections, section 6661, subdivision (a) denies those candidates due process and equal protection of the law contrary to the Fourteenth Amendment. He argues further that this section places unconstitutional burdens upon the Libertarian Party.[3]

Preliminarily, we note that, although the primary election from which this case arises is long past, we have not dismissed the appeal as moot because the constitutional issue is of general public interest and likely to recur. (See *Green* v. *Layton* (1975) 14 Cal.3d 922, 925 [123 Cal.Rptr. 97, 538 P.2d 225]; *Knoll* v. *Davidson* (1974) 12 Cal.3d 335, 344 [116 Cal.Rptr. 97, 525 P.2d 1273].)

Turning to the merits of the constitutional issue, we must first determine the appropriate standard against which the statutory classification is to be measured. Under the rational basis test, applicable where fundamental interests or suspect classifications are not involved, a statutory classification will be upheld if it is rationally related to a legitimate state interest. (*Weber* v. *City Council* (1973) 9 Cal.3d 950, 958-959 [109 Cal.Rptr. 553, 513 P.2d 601]; *Westbrook* v. *Mihaly* (1970) 2 Cal.3d 765, 784-785 [87 Cal.Rptr. 839, 471 P.2d 487], vacated on other grounds, 403 U.S. 915 [29 L.Ed.2d 692, 91 S.Ct. 2224].) In cases involving suspect classifications or fundamental rights, however, the courts have applied the strict scrutiny test, which requires the state to establish both that the statute is justified by a "compelling" interest and that its classification is "necessary" to further that interest. (*Weber* v. *City Council, supra,* 9 Cal.3d at p. 959; *Westbrook* v. *Mihaly, supra,* 2 Cal.3d at pp. 784-785.)

---

[3]We assume, without deciding, that appellant has standing to raise this issue. (See *Jenness* v. *Fortson* (1971) 403 U.S. 431, 441, fn. 26 [29 L.Ed.2d 554, 562, 91 S.Ct. 1970].)

The United States Supreme Court has indicated that candidacy for public office may not be a fundamental right which of itself warrants strict scrutiny. (See, e.g., *American Party of Texas* v. *White* (1974) 415 U.S. 767, 780, fn. 11 [39 L.Ed.2d 744, 760, 94 S.Ct. 1296]; *Bullock* v. *Carter* (1972) 405 U.S. 134, 142-144 [31 L.Ed.2d 92, 99-100, 92 S.Ct. 849].) In *Bullock*, the court held that ballot access statutes are not subject to strict scrutiny unless the restriction on a candidate's access to the ballot has a "real and appreciable impact" upon the fundamental right to vote. (*Bullock* v. *Carter, supra*, at p. 144 [31 L.Ed.2d at p. 100]; see also *Rosario* v. *Rockefeller* (1973) 410 U.S. 752, 760-762 [36 L.Ed.2d 1, 8-9, 93 S.Ct. 1245]; see generally, Dunham, Minor Parties and Independent Candidates: Constitutional Issues (Cont.Ed.Bar 1977) §§ 14.4-14.7, pp. 705-709.)

Applying the foregoing principles, we conclude that the restriction involved in the present case does not have an appreciable impact upon the right to vote. The existence of reasonable means of gaining access to the general election ballot refutes appellant's contention that section 6661, subdivision (a) makes it either impossible or unduly burdensome for a prospective candidate to gain access to such ballot. For example, a prospective candidate may qualify to appear on his party's primary election ballot in which case he will not be subject to the requirements of section 6661. (§§ 6491, 6610; see *State* ex rel. *McIntyre* v. *Mininni* (1972) 32 Ohio St.2d 17 [61 Ohio Ops.2d 158, 288 N.E.2d 816, 819] (dis. opn. of Leach, J.); see also *Lubin* v. *Panish* (1974) 415 U.S. 709, 718 [39 L.Ed.2d 702, 709-710, 94 S.Ct. 1315]; *Knoll* v. *Davidson, supra,* 12 Cal.3d at pp. 347-348; *Libertarian Party* v. *Eu* (1978) 83 Cal.App.3d 470, 474 [147 Cal.Rptr. 888]; *Cross* v. *Fong Eu* (N.D.Cal. 1977) 430 F.Supp. 1036, 1039.) In upholding the constitutionality of a statute similar to the one involved in the instant case, a federal district court in *Blair* v. *Hebl* (W.D.Wis. 1980) 498 F.Supp. 756, 761 (affd. in 639 F.2d 786) observed that the statutory scheme in that case, like the California scheme, afforded all candidates access to the ballot by the "simple expedient of filing nomination papers." A prospective candidate may also attempt to meet the minimal requirements of section 6661, subdivision (a) by simply encouraging more voters to register with his party during his campaign. (See § 300 et seq.) We also note that appellant could have become a write-in candidate on the general election ballot. (See § 7300 et seq.; *Kellam* v. *Eu* (1978) 83 Cal.App.3d 463, 469 [147 Cal. Rptr. 884].)

■ Our inquiry, therefore, is limited to a determination whether the challenged statutory classification is rationally related to a legiti-

mate state interest. Since a person may become a write-in candidate for the nomination of a party with which he is not affiliated (see 35 Ops.Cal.Atty.Gen. 206 (1960)), one of the effects of section 6661, subdivision (a) is to ensure that the state will not be required to print on the general election ballot the name of a candidate who is neither affiliated with a qualified political party nor has obtained some minimal amount of support among that party's electorate. (See, e.g., *Storer* v. *Brown* (1974) 415 U.S. 724, 732-733 [39 L.Ed.2d 714, 725, 94 S.Ct. 1274]; *Jenness* v. *Fortson, supra*, 403 U.S. 431, 442 [29 L.Ed.2d 554, 562-563].) This statute also encourages persons to seek the nomination of parties with which they are affiliated, thus promoting stronger political parties and discouraging factionalism. In addition, by encouraging candidates to place their name on the primary election ballot, this section fosters open campaigns where both candidates and issues will be brought before the electorate, and surprise nominations of little-supported candidates will be avoided.

The basic purpose of the California direct primary is to give the power of selection of the party nominee to the members of the party. The months before a primary election are a time for members to question candidates and examine their qualifications. The party, as an entity, is prohibited from preprimary endorsements. (§ 11702.) On the other hand, a write-in candidate may enter the race up to 14 days before the election. (§ 7301.) The potential exists that a late entry write-in candidate will circumvent the intended high exposure months before the primary. The Legislature has wisely compensated for this possibility by requiring a minimal amount of support for a write-in candidate through the section in question.

Further, this section prevents candidates, without the requisite support, from taking advantage of a situation where no candidate has appeared on the primary ballot for a particular office by running as a write-in candidate for that office.

Finally, the challenged statute lessens the possibility of a nomination of a little-supported candidate who, if a party member, acquires membership to his party's state and county central committees. (See §§ 9765, 9793.)

It is clear that the avoidance of confusion and deception of the democratic process at a general election as well as the fostering of the efficient operation of the primary system are valid and legitimate state

goàls. (See *Jenness* v. *Fortson, supra*, 403 U.S. 431, 442 [29 L.Ed.2d 554, 562-563]; *Communist Party* v. *Peek* (1942) 20 Cal.2d 536, 552-553 [127 P.2d 889].) The percentage requirement of section 6661, subdivision (a) advances those goals in a meaningful way and is in no sense invidious or arbitrary.

The judgment is affirmed.

Rouse, Acting P. J., and Miller, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 4, 1982. Mosk, J., Newman, J., and Broussard, J., were of the opinion that the petition should be granted.