[Civ. No. 52886. Second Dist., Div. Five. July 31, 1978.]

LIBERTARIAN PARTY OF CALIFORNIA et al.,
Plaintiffs and Appellants, v.
MARCH FONG EU, as Secretary of State, etc., et al.,
Defendants and Respondents.

## COUNSEL

Sills, Dougherty & Hendrickson and Ray Hendrickson for Plaintiffs and Appellants.

Evelle J. Younger, Attorney General, Iver E. Skjeie, Assistant Attorney General, and Henry G. Ullerich, Deputy Attorney General, for Defendants and Respondents.

OPINION

HASTINGS, J.—This appeal challenges the constitutionality of Elections Code section 7203,[1] on equal protection and due process grounds. To pinpoint the problem: the section, by its wording, prevents an independent candidate in a special election from participating in a runoff election when no candidate receives a majority vote in the primary election.

The underlying facts to this appeal are as follows: In accordance with the laws governing an Assembly vacancy the Governor called a special election for the 44th Assembly District to fill an unexpired term ending December 4, 1978. Petitioner Lawrence Kellam's name appeared on the ballot for the special primary election held May 31, 1977, pursuant to an order of the Los Angeles Superior Court. (See companion case *Kellam* v. *Eu* (1978) *ante,* p. 463 [147 Cal.Rptr. 884].) Kellam was the only independent candidate in a field of 13, and he placed 11th, receiving 193 of 48,130 votes cast. Because no candidate received a majority in this primary election, the leading Democrat who placed first among the thirteen candidates, and the leading Republican who placed fourth, were named on the general election ballot.[2] Petitioner Kellam was notified that he had not qualified to appear on the special general election ballot. Subsequently he, two registered voters from the 44th Assembly District, and the Libertarian Party, filed a petition for a writ of mandate which sought invalidation of section 7203 or, in the alternative, that petitioner Kellam be included on the ballot. The court sustained respondents' general demurrer without leave to amend; the action was dismissed; and this appeal followed.[3]

■ The "strict scrutiny" or "compelling interest" test is most frequently applied when considering the constitutionality of election laws. This is due to the fundamental nature of the right to vote. A

---

[1]Elections Code, section 7203 provides as follows: "If no candidate receives a majority of votes cast, the name of that candidate of each qualified political party who receives the most votes cast for all candidates of that party shall be placed on the special general election ballot as the candidate of that party."

[2]Section 7202 of the Elections Code provides that "if any candidate receives a majority of all votes cast, he shall be declared elected, and no special general election shall be held."

[3]Although the special election that raised the constitutional question involved here is long past, we have not dismissed the appeal as moot because the constitutional issue is a question of general public interest and is likely to recur. (*Green* v. *Layton,* 14 Cal.3d 922, 925 [123 Cal.Rptr. 97, 538 P.2d 225]; *Knoll* v. *Davidson,* 12 Cal.3d 335, 344 [116 Cal.Rptr. 97, 525 P.2d 1273]; see companion case *Kellam* v. *Eu, supra, ante,* at p. 463.)

classification infringing this right *must* be given strict scrutiny if it has a "real and appreciable impact" upon the fairness and equality of the election process. (*Bullock* v. *Carter,* 405 U.S. 134, 144 [31 L.Ed.2d 92, 100, 92 S.Ct. 849]; *Choudhry* v. *Free,* 17 Cal.3d 660, 664 [131 Cal.Rptr. 654, 552 P.2d 438].) There are exceptions, however, when the "rationale basis" test is appropriate. ■ Here, we believe section 7203 would be unconstitutional under either test. Section 7203 excludes all independent[4] candidates in California from appearing on any special general election ballot. Qualified party candidates automatically, by means of section 7203, appear before the voters a second time, if the general election is held at all, and in a field limited exclusively to them. Independent candidates must hope to achieve a majority in an unlimited field of competitors— thirteen in the present case—and if they fail by even one vote, they are automatically excluded from the special general election ballot. To illustrate, Jones an Independent candidate receives 45 percent of the overall vote in the special primary. Smith, a Democrat, receives 15 percent of the vote which is tops for a Democrat, and Johnston, the top Republican, wins 10 percent. The remaining 30 percent of the vote is divided between other Democrats, Republicans, and Independents. Only Smith and Johnston qualify for the runoff. The unfairness of this situation to Jones *and* the voting public at the special general election is obvious. The current law places a manifestly severe burden upon Independent candidates because they *must* acquire a majority vote in the primary. Candidates who represent a qualified political party are not faced with such a difficult task.

The basic issue before us is whether it is within the bounds of the Constitution to exclude from a general election ballot all who are not affiliated with an established political party. Without for the moment ruling on Mr. Kellam's candidacy in particular, we find that recent authority emphatically prohibits such an exclusion. Most of this authority finds its roots in *Williams* v. *Rhodes,* 393 U.S. 23 [21 L.Ed.2d 24, 89 S.Ct. 5], in which the court ruled that giving old, established parties "a decided advantage over any new parties struggling for existence" places "substantially unequal burdens on both the right to vote and the right to associate," and concluded that "[t]he right to form a party for the advancement of political goals means little if a party can be kept off the election ballot and thus denied an equal opportunity to win votes." (*Id.,* at p. 31 [21 L.Ed.2d at p. 31].)

[4]Independent candidates are members of unqualified political parties or members of the public unaffiliated with any party.

The California Supreme Court has also recognized the unequal burden which statutory exclusion creates, in striking down a restrictive voter information statute (*Ferrara* v. *Belanger,* 18 Cal.3d 253 [133 Cal.Rptr. 849, 555 P.2d 1089]), and in overturning a statute requiring top ballot position for incumbent candidates (*Gould* v. *Grubb,* 14 Cal.3d 661 [122 Cal.Rptr. 377, 536 P.2d 1337]). In the latter case the court emphasized that "the state must eschew arbitrary preferment of one candidate over another." (*Gould, supra,* at p. 677.) Where the state's preferment is so pronounced as to exclude all independent candidates from a particular election, the state has overstepped its legitimate powers of regulation. Where the burden which section 7203 places on independent party candidates additionally admits of no alternative approach to the ballot, it is so severe as to violate voters' and candidates' rights to equal protection. We therefore find that the statute is unconstitutional.

By this decision we do not in any way mean to suggest that the state lacks authority to limit the size or makeup of the special general election ballot. Such an objective is clearly within the scope of the state's duties and cannot be claimed to be *per se* a violation of equal protection or a denial of due process of the law. (*Jenness* v. *Fortson,* 403 U.S. 431 [29 L.Ed.2d 554, 91 S.Ct. 1970].) The present scheme, far from being the least restrictive implementation of the state's objectives, is subject to a number of less restrictive alternatives. The Attorney General, in 50 Ops.Cal.Atty. Gen. 80, 84 (1967), attributes the exclusion of independent candidates from full participation in special elections to "legislative oversight." The opinion recognizes the burden that such oversight places upon "the fundamental right of citizens generally not only to vote but also to seek and hold office," (*id.,* at p. 83) and proposes several possible ways of achieving candidacy on the special general election ballot so as not to automatically exclude the candidates of unqualified political parties. For example, he states (p. 86): ". . . an independent would participate in the special election if he were one of the two candidates who received the most votes—short of a majority—in the primary. This alternative provides the independent candidate the opportunity of participating in the section 7201 primary election by having his name placed on the primary ballot and yet preserves the classic purpose of the primary of eliminating candidates who have not shown sufficient voting strength at the polls. Furthermore, section 7203 is given effect. Although it would be preferable for the Legislature to set forth the proper alternative, it is our opinion that this alternative is the most equitable and most in harmony with the statutory scheme."

As heretofore indicated, petitioner Kellam received only 193 votes out of the 48,130 cast. We find no indication in any authority that, under whatever fair system is adopted, the state would be under an obligation to assure ballot position for a candidate who placed 11th in the primary and was supported by only .4 percent of the voters. The state's interest in limiting ballot size to those who have demonstrated a "significant modicum of support" (*Jenness, supra,* at p. 442 [29 L.Ed.2d at p. 562]) is not at all affected by our ruling here.

However, because the statute is unconstitutional, we are required to reverse the judgment of dismissal.

Kaus, P. J., and Ashby, J., concurred.