[No. A036119. First Dist., Div. Five. Feb. 9, 1987.]

SONOMA COUNTY NUCLEAR FREE ZONE '86 et al., Petitioners, v.
THE SUPERIOR COURT OF SONOMA COUNTY, Respondent;
EEVE T. LEWIS, as County Clerk, etc., et al., Real Parties in Interest.

168

**COUNSEL**

Colleen S. O'Neal for Petitioners.

No appearance for Respondent.

James P. Botz, County Counsel, Marian E. Moe, Deputy County Counsel, John M. Kaman, John V. Erickson and Collette & Erickson for Real Parties in Interest.

**OPINION**

**HANING, J.**—The proponents of the Sonoma County Nuclear Free Zone Initiative filed this petition for extraordinary relief two months prior to the general election of November 4, 1986. They sought a writ compelling respondent superior court to set aside its peremptory writ of mandate which directed the Sonoma County Clerk (Clerk) to accept for filing ballot arguments against the initiative which had been submitted by Citizens Against Nuclear Free Zone Initiative (Con-NFZ) after the statutory filing deadline had expired. The petition was filed just before the Sonoma County sample ballots were to be delivered to the printer, and requested immediate relief from this court to prevent the printing of the late arguments on the ballot forms.

We concluded the petition raised issues of colorable merit concerning implementation of Elections Code section 3784 and the process of filing ballot arguments for and against county initiatives.[1] Yet, we were unwilling to interfere with the electoral process by the issuance of an order or writ affecting the ballot printing process. We were likewise disinclined to resolve important legal questions under severe time pressures, when the effect of issuing a writ would have been removal of the arguments against the initiative from the voters' consideration. Although we denied petitioners' request for immediate relief, we issued the alternative writ to resolve important questions of law concerning aspects of the electoral process, questions we consid-

---

[1] All statutory references are to the Elections Code unless otherwise indicated.

ered " 'capable of repetition, yet evading review.' " (*Moore* v. *Ogilvie* (1969) 394 U.S. 814, 816 [23 L.Ed.2d 1, 4, 89 S.Ct. 1493].) ▮ The occurrence of the November election prior to our resolution of this petition does not render the petition moot. (*Ferrara* v. *Belanger* (1976) 18 Cal.3d 253, 259 [133 Cal.Rptr. 849, 555 P.2d 1089]; *Libertarian Party* v. *Eu* (1978) 83 Cal.App.3d 470, 472, fn. 3 [147 Cal.Rptr. 888]; see also *Green* v. *Layton* (1975) 14 Cal.3d 922, 925 [123 Cal.Rptr. 97, 538 P.2d 225].)[2] Having heard oral argument, we now conclude that the superior court's issuance of the writ against the Clerk was in error.

The Sonoma County Nuclear Free Zone Initiative (NFZI) would have made it illegal in Sonoma County to produce, store, transport, dispose of, process or use any "nuclear weapon or component of a nuclear weapon, enriched nuclear material or radioactive waste." The group supporting the initiative, Sonoma County Nuclear Free Zone '86, along with individual sponsors and proponents of the initiative (referred to collectively as Pro-NFZ) submitted NFZI and its supporting petitions to the Clerk on June 27, 1986. Pursuant to section 3708 the Clerk determined that NFZI was supported by a sufficient number of verified signatures to qualify for the November ballot, and then certified the initiative to the Sonoma County Board of Supervisors (Board). Certification put the Board to the choice of either adopting the initiative as proposed or submitting it to the voters. (§ 3711; see *Citizens Against a New Jail* v. *Board of Supervisors* (1976) 63 Cal.App.3d 559 [134 Cal.Rptr. 36].) On August 5, 1986, the Board decided to submit NFZI to the electorate.

The Clerk proceeded to set deadlines for the filing of pro and con ballot arguments pursuant to section 3784, which provides that "[b]ased on the time reasonably necessary to prepare and print the arguments, analysis, and sample ballots and to permit the 10-calendar-day public examination as provided in Article 5 (commencing with Section 3795) for the particular election, the county clerk shall fix and determine a reasonable date prior to the election after which no arguments for or against any county measure may be submitted for printing and distribution to the voters . . . ." ▮ Section 3795 provides that the public be able to examine proposed ballot arguments for a 10-day period before their submission to the printer, to enable members of the public to take court action should they consider language of the ballot arguments to be false or misleading. A clerk's deadlines set by this statute must therefore allow for both a reasonable time for printing and the necessary period of public inspection.

After due consideration of the various stages of the printing process and

---

[2]The Nuclear Free Zone Initiative was defeated in the November election.

the time to be allotted for proofreading and corrections, the Clerk determined her "absolute printing deadline" would be September 8, 1986. To allow for the 10-day preprinting period of public examination, the Clerk set August 28, 1986, at 5:00 p.m. as the final deadline for submission of ballot arguments. Since rebuttal arguments must be filed not later than 10 days after the filing of direct arguments (§ 3787), the Clerk set the filing deadlines for direct arguments, pro and con, to be August 18, 1986, and the final deadline of August 28 became the deadline for filing rebuttal arguments.

On August 8, 1986, in accordance with section 3784 and Government Code section 6060, the Clerk published notice of the ballot argument deadlines in the Santa Rosa Press Democrat, a newspaper of general circulation. On August 18, pro-NFZ timely filed its direct pro argument; Con-NFZ did not timely file a direct con argument. A day or two after the deadline, Con-NFZ asked the Clerk if she would accept a late direct argument for filing. She refused, citing section 3784's mandatory proscription against late filings. Four days after the deadline, on August 22, 1986, Con-NFZ filed a petition for peremptory writ of mandate with the Sonoma County Superior Court. The petition named the Clerk, but not Pro-NFZ, as real party in interest. As we will discuss more fully below, Pro-NFZ had no notice of the emergency hearing on Con-NFZ's petition.

Con-NFZ's petition asked the court to order the Clerk to accept its late ballot argument, notwithstanding the mandatory language of section 3784. Con-NFZ contended that the Clerk had a duty under the section to set reasonable deadlines, but had abused that discretion by setting the deadlines so soon after the Board's certification of the initiative. Con-NFZ also contended it had been misinformed by an employee of the Clerk's office, who allegedly told Con-NFZ by telephone that the deadline for filing the direct ballot argument was the 28th, when that in fact was the deadline for rebuttal arguments. Other than section 3784 and other statutes of tangential relevance, the only legal authority cited by Con-NFZ's petition and supporting points and authorities was *Ferrara* v. *Belanger, supra,* 18 Cal.3d 253, which was cited for the general proposition that the electorate should be fully informed on both pro and con positions on an initiative measure.

At the hearing the superior court made a finding that the ballot printing would not be disrupted by the filing of a late direct argument. The court issued a peremptory writ of mandate directing the Clerk to file the con argument forthwith, and ordered Con-NFZ to serve a copy of its direct argument on Pro-NFZ. A copy of the argument and of the peremptory writ, but not the petition itself, was personally served on a Pro-NFZ representative shortly after the hearing. Because the direct argument cut by four days into the ten-day rebuttal period, the court extended the Clerk's deadline for rebuttal an

extra day, to August 29, giving Pro-NFZ seven days in which to file a rebuttal argument. Pro-NFZ was able to file its rebuttal argument within the extended period, and was able to successfully prosecute a separate mandamus action under section 3795 to alter language of the argument found false or misleading.

By this petition for writ relief, Pro-NFZ challenges the superior court's authority to issue the peremptory writ against the Clerk. Both Con-NFZ and the Clerk are real parties in interest, the Clerk taking a position harmonious with Pro-NFZ. Our procedural treatment of the petition has been noted. ■ ■■■ We turn now to the merits of the questions presented.[3]

■ Pro-NFZ first contends that it was real party in interest to the superior court writ proceeding, and the superior court had no authority to issue a peremptory writ of mandate without notice to the real party in interest. We agree.

■ A petition for writ of mandate must name the real party in interest, who thereafter has a right to notice and to be heard before a trial or appellate court issues a peremptory writ. (Code Civ. Proc., §§ 1088, 1107; 8 Witkin, Cal. Procedure (3d ed. 1985) Extraordinary Writs, § 148, pp. 789-790; § 195, p. 823; Cal. Civil Writs (Cont.Ed.Bar 1970) § 10.18, pp. 194-195; see also *Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 177-180 [203 Cal.Rptr. 626, 681 P.2d 893]; Cal. Rules of Court, rule 56(a) [both in regard to writs issued by reviewing courts].) ■ "Real party in interest" has been generally defined as "any person or entity whose interest will be directly affected by the proceeding . . . ." (Cal. Civil Writs (Cont.Ed.Bar 1970) § 10.18, p. 194.) While the real party in interest is "usually the other party to the lawsuit or proceeding being challenged" (*ibid.*), it may be "the person or entity in whose favor the acts complained of operates [*sic*]" or "anyone having a direct interest in the result" (*id.,* at p. 195), or "the real adverse party . . . in whose favor the act complained of has been done." (*Matter of De Lucca*

---

[3]We have considered and rejected Con-NFZ's miscellaneous procedural objections to Pro-NFZ's petition. Con-NFZ argues that Pro-NFZ was not a party to the mandate proceedings in superior court and therefore may not seek review of those proceedings by this petition. The contention begs the question whether Pro-NFZ *should* have been a party and was wrongfully precluded from party status by Con-NFZ's failure to name the group as real party in interest. Aside from this question, any party with a sufficient beneficial interest in the subject of the proceedings may seek writ relief, and need not necessarily be a party to the action before the tribunal against whom the writ is sought. (Code Civ. Proc., § 1086; *Burlingame* v. *Justice's Court* (1934) 1 Cal.2d 71 [33 P.2d 669]; Cal. Civil Writs (Cont.Ed.Bar 1970) §§ 5.19, 5.20, pp. 74-75.) Whether Pro-NFZ has a beneficial interest sufficient to be petitioner here dovetails with the question of whether it had an interest directly affected by the proceedings sufficient to render it a real party in interest to Con-NFZ's writ petition in superior court. That question is reviewed in the text and resolved in favor of Pro-NFZ.

Con-NFZ's remaining procedural objections do not merit discussion.

(1905) 146 Cal. 110, 113 [79 P. 853]; see also *California C. C. Corp.* v. *Superior Court* (1932) 122 Cal.App. 404, 408 [10 P.2d 176]; *Sheldon* v. *Superior Court* (1941) 42 Cal.App.2d 406 [108 P.2d 945].)

Under these definitions it is difficult to conclude other than that Pro-NFZ was a real party in interest in the Con-NFZ writ proceeding. Pro-NFZ and Con-NFZ were two cognizable groups contesting the merits of a county initiative. As the group who had authored and filed a direct pro argument for the November ballot, Pro-NFZ had a clear, direct interest in the question whether Con-NFZ should be permitted a late filing. Con-NFZ's writ petition sought relief from deadlines set to ensure reasonable time for distribution of sample ballots. Even though the trial court happened to find that the late filing would not jeopardize the printing process, Pro-NFZ had a direct interest in litigating the question and participating in the hearing. The fact that Pro-NFZ retained time for rebuttal to the late argument, and was able to file a challenge to Con-NFZ's ballot language under section 3795, does not detract from its direct interest in the Con-NFZ writ petition.

Pro-NFZ's interest should not be characterized as a self-serving interest in foreclosing their opponent's debate on a "technicality." Rather, significant interests of an orderly election process are raised by section 3784 and its implementation. As the proponents of an initiative, Pro-NFZ had a legitimate interest in assuring the ballots reached the voters on time, to prevent last-minute and perhaps harried decisionmaking by the electorate. In addition, the late filing could easily place Pro-NFZ at a tactical disadvantage. The deadline for pro and con direct arguments implies a scenario of simultaneous filing; permitting filing of a con argument four days after the filing of a pro argument gives rise to a serious potential for abuse of the fairness of the electoral process, by giving the con side a chance to read and review the pro argument before filing theirs. This essentially gives the con side a chance to file two rebuttals to the direct con argument, instead of one.[4]

Con-NFZ nevertheless argues that Pro-NFZ did not have a direct interest in the proceedings below and was properly omitted as a real party in interest. Con-NFZ makes the related legal argument that Pro-NFZ's petition in this court is fatally defective because Pro-NFZ does not have a "beneficial interest" in the dispute over the late filing of the direct con argument. (See fn. 3, *ante.*) Under the circumstances of this case, whether Pro-NFZ had a "direct interest" sufficient to make it a real party below, and whether it has a "beneficial interest" to permit it to file a petition for writ of mandate with this court, is essentially the same question resolved by a single analysis.

---

[4]Pro-NFZ alleges that on August 21, one of its individual proponents participated in a public debate on NFZI with an attorney for Con-NFZ, and that the attorney appeared to have read and become familiar with the Pro-NFZ ballot argument filed three days earlier.

It is true that mandamus actions against a ministerial officer, public official or board frequently have no adverse real party in interest when the writ is sought to compel the officer or board to act in compliance with the law. (See Cal. Civil Writs (Cont.Ed.Bar 1970) § 10.18, pp. 194-195.) Con-NFZ relies on two election cases in which a petitioner sought a writ in just that fashion, and did not name a real party in interest. (*Ferrara* v. *Belanger, supra,* 18 Cal.3d 253; *Coalition for Fair Rent* v. *Abdelnour* (1980) 107 Cal.App.3d 97 [165 Cal.Rptr. 685].) In *Ferrara,* petitioners sought a writ to compel a city clerk to accept for filing arguments in favor of a ballot initiative, which the clerk wrongfully refused due to an erroneous interpretation of law. *Abdelnour* involved proceedings to qualify a proposed initiative for the ballot by requiring the city clerk to verify signatures submitted on a supplemental petition. Both of these cases involve general implementation of initiative provisions at stages of the process *prior to* qualification for the ballot and the filing of timely pro-initiative arguments. Neither case involved a cognizable group organized to defeat an initiative, and neither involved the structured opposition and the timetables of primary and rebuttal arguments envisioned by section 3784. As such, these cases do not aid Con-NFZ's position.[5]

When a county initiative is qualified for the ballot and direct arguments are made, and two cognizable groups are in existence in direct conflict on the merits of the initiative, each group has a clear interest in rebutting on the ballot pamphlet and opposing in public debate the direct ballot arguments of the other. In such a case, a trial court writ petition concerning the deadlines of section 3784 must name the opposing group as real party in interest.

In light of the foregoing, we reject Con-NFZ's related contention that Pro-NFZ lacks a sufficient beneficial interest to appear as petitioner in this court. Pro-NFZ clearly has a "special interest to be served or some particular right to be preserved or protected over and above the interest held in common with the public at large." (*Carsten* v. *Psychology Examining Com.* (1980) 27 Cal.3d 793, 796 [166 Cal.Rptr. 844, 614 P.2d 276]; see *Parker* v. *Bowron* (1953) 40 Cal.2d 344, 351 [254 P.2d 6]; Cal. Civil Writs (Cont.Ed.Bar Supp. 1986) § 10.29, p. 88.)

We conclude the issuance of a peremptory writ by the trial court

[5]Con-NFZ also relies on *Libertarian Party* v. *Eu, supra,* 83 Cal.App.3d 470. In that case a Libertarian candidate sought a writ of mandate against the Secretary of State to compel placing his name on the ballot; the other candidates for the office were not named as real parties in interest. *Libertarian Party* did not involve the initiative process, or a statute such as section 3784 which contemplates a structured opposition of two sides to a debate each of which is obligated to timely rebut the direct ballot arguments of the other.

was beyond the pale of its authority because Pro-NFZ had no notice of the hearing on the petition. (Code Civ. Proc., § 1088; Cal. Civil Writs (Cont.Ed.Bar 1970) §§ 4.27, pp. 57-58, 5.45, p. 96; see *Palma* v. *U.S. Industrial Fasteners, Inc., supra,* 36 Cal.3d at pp. 177-180; see also *Superior Court* v. *Dist. Court of Appeal* (1966) 65 Cal.2d 293, 296 [54 Cal.Rptr. 119, 419 P.2d 183]; cf. *Walsh* v. *Railroad Commission* (1940) 16 Cal.2d 691 [107 P.2d 611].)

Con-NFZ attempted notice by telephoning Pro-NFZ at the number listed in the group's initiative petitions. The call was taken by an answering machine, which recorded a message not discovered until after the hearing. As proponents of a controversial initiative, Pro-NFZ should have anticipated becoming a party to emergency litigation and should have monitored more frequently its telephone messages. This unfortunate lapse, however, does not excuse Con-NFZ from affording actual notice of the hearing, because the telephone number was not the only method known to Con-NFZ of effecting notice.

Pro-NFZ had filed with the Clerk the necessary declaration that its direct pro argument was true and correct. This document bore the name, address and telephone number of a primary sponsor of the initiative; this sponsor was known to Con-NFZ, having just previously publicly debated the merits of NFZI with a Con-NFZ representative. Moreover, Con-NFZ was able to effect personal "home" service of the peremptory writ of mandate on another sponsor of NFZI, virtually within minutes of the superior court hearing. Clearly this person and her residence were known to Con-NFZ's attorneys. We can only conclude Con-NFZ could have given actual notice of the hearing without the risk of reliance on a recording device, but for some reason chose not to. Under these circumstances we conclude Pro-NFZ was inexcusibly provided no actual notice of the hearing.

Aside from the notice issue, the superior court's issuance of a writ directed to the Clerk was in error on substantive grounds. We address them in this opinion because of the lack of any case law interpreting section 3784.

■ Section 3784 embodies two components: the county clerk's determination of reasonable ballot argument deadlines and the mandatory prohibition of late filings. The county clerk's selection of deadlines involves " 'the exercise of judgment and discretion' " and is thus a discretionary decision. (*Glendale City Employees' Assn. Inc.* v. *City of Glendale* (1975) 15 Cal.3d 328, 344 [124 Cal.Rptr. 513, 540 P.2d 609], cert. den. (1976) 424 U.S. 943 [47 L.Ed.2d 349, 96 S.Ct. 1411], quoting *Jenkins* v. *Knight* (1956) 46 Cal.2d 220, 223-224 [293 P.2d 6].) In contrast, the prohibition on late filings

imposes a mandatory ministerial duty on the Clerk to reject arguments submitted after the deadline has expired.

Con-NFZ's writ petition below essentially argued (1) that the Clerk had abused her discretion by setting ballot deadlines which were unreasonably close to the·date of certification of the initiative by the Board, and (2) that late filings were not prohibited if they would not infringe upon the ballot printing process, because the electorate had a significant interest in access to arguments on both sides of a ballot issue. The legal basis of the superior court's issuance of the writ is not entirely clear, but neither aspect of Con-NFZ's petition justified issuance of a peremptory writ.

A writ of mandate may issue to correct an abuse of discretion. (*Glendale City Employees' Assn., Inc.* v. *City of Glendale, supra* 15 Cal.3d at p. 344, fn. 24.) Given the discretion allowed the Clerk under section 3784, a litigant could bring a mandate petition claiming the deadlines were unreasonable to permit effective argument preparation. Con-NFZ claims the Clerk's deadlines were unreasonably abbreviated, and did not allow for sufficient time for opposition to coalesce, but their argument cannot withstand scrutiny on this record.

The NFZI did not spring at Con-NFZ from the shadows. The initiative was well-publicized in Sonoma County, and as early as July 4, 1986, senior officials of Hewlett-Packard and Optical Coating Laboratory, two firms doing business in the county whose operations might be construed as employing "components" of nuclear weapons under possible interpretations of the NFZI, were interviewed and quoted in press reports of the initiative. These concerns had considerable time to evaluate the impact of NFZI during the time the Clerk verified signatures and certified the measure to the Board. The Board's certification on August 5 was done at the first board meeting after the signature verification was completed. Once the certification was made and the argument deadlines set, there was ample time for Con-NFZ, with its corporate resources, to "constitute" itself in time to compose and file a timely ballot argument. Given the numerous reasons for the Clerk's selection of the August 18 and August 28 deadlines, Con-NFZ's nebulous claims of nonmobilization cannot suffice to show the Clerk abused her discretion in setting the argument deadlines.

We construe section 3784 to contemplate an orderly process wherein the official with specific expertise sets deadlines which are to be disturbed by courts only in the most egregious of situations. The deadlines set in this case were reasonable in light of the constraints of the printing process and the need to permit the 10-day public inspection of the initiative as required by section 3795. Furthermore, there was no undue delay in the certification and

publication of the deadlines. We cannot set rules for all future cases, but when opponents of county initiatives have actual knowledge of a proposed initiative and fail to meet a duly set and published deadline, a court should not lightly find an abuse of discretion, particularly when the challenge to the length of the deadline is not made until after the deadline has expired.

■ Once the clerk reasonably exercises discretion and sets the deadlines, a trial court generally has no power to order the clerk to accept a late argument for filing. Section 3784 clearly provides that "no arguments for or against an initiative may be filed" after expiration of the deadline. The provision is mandatory and allows for no discretion, and the county clerk has a ministerial duty to enforce it. A court has no power to order a public official to commit an act in violation of a valid statute. The writ may only issue against a respondent with a clear duty to perform a ministerial act and with a legal authority to discharge that duty. (See Cal. Civil Writs (Cont.Ed.Bar 1970) § 5.23, pp. 77-78.)

If the court below concluded the deadlines were reasonable but determined that it had authority to order the Clerk to accept a late argument, the court reached an erroneous conclusion. The Clerk had a legal duty to enforce the statutory ban and could not ignore the clear mandate of the prohibition against acceptance of late filing. There was thus no basis for issuance of a writ on a theory of compelling performance of a ministerial act.

The *Ferrara* decision, advanced by Con-NFZ below, does not alter this conclusion. *Ferrara* only confirms the electorate's general interest in full information on an initiative. The electorate's information interest would in fact be *disserved* by nonadherence to the reasonable deadlines set by a clerk in the furtherance of an efficient printing scheme; the *Ferrara* opinion recognizes the state's "legitimate, indeed compelling, interest in requiring that ballot arguments be submitted sufficiently before an election to afford election officials a reasonable time to print and distribute the arguments." (*Ferrara* v. *Belanger, supra,* 18 Cal.3d at p. 264.) This is precisely the interest embodied by section 3784. Once the deadlines are set, it is not for a court to determine, contrary to the discretion of the clerk, that a modification of the deadline would not create unacceptable interference with the election process. This usurps the function of the clerk and incorporates instability into the electoral process, as well as violating the clear terms of the statute.[6]

---

[6]Con-NFZ claims it was misled by the Clerk's office employee as to the exact deadlines. The evidence of this is weak. Con-NFZ presents a hearsay recitation that an identified employee of Con-NFZ contacted an unidentified member of the Clerk's office. We are not presented with a declaration from the employee under penalty of perjury. The Clerk denies the conversation occurred. We cannot assume the truth of the vague claim of misleading information in the face of this direct denial. We express no opinion as to whether misleading information from the Clerk may enable the invocation of an estoppel theory and permit a writ compelling filing of a late argument.

In light of our disposition of the above arguments, we need not discuss the remaining contentions of the parties. The alternative writ, having served its purpose, is discharged. Because issuance of a writ would now be academic, the peremptory writ is denied. Petitioners shall recover costs.

Low, P. J., and King, J., concurred.