Filed 4/14/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CHRISTOPHER DURKIN et al., <br><br> Plaintiffs and Appellants, <br> v. <br> CITY AND COUNTY OF SAN FRANCISCO et al., <br><br> Defendants and Respondents; <br> PHILIP KAUFMAN, <br><br> Real Party in Interest and Respondent. | A162859, A163639 <br><br> (City & County of San Francisco Super. Ct. No. CPF-20-517317) |

After the San Francisco Planning Commission (Planning Commission) approved a final mitigated negative declaration for the proposed renovation of a residence by Christopher Durkin and 2417 Green Street, LLC (appellants), Philip Kaufman, the owner of an adjacent property, appealed the matter to the San Francisco Board of Supervisors (Board), which reversed the Planning Commission's decision.  Appellants filed a petition for writ of mandate against the City and County of San Francisco, the Board, the Planning Commission, and the San Francisco Planning Department (Planning Department), naming Kaufman as a real party in interest.  In

1

response, Kaufman filed a special motion to strike under the anti-SLAPP[1] law (Code Civ. Proc., § 425.16),[2] arguing that the petition arose from his protected petitioning activity and lacked minimal merit.  The trial court granted the anti-SLAPP motion and awarded Kaufman attorney fees as the prevailing party on the motion.

We conclude the trial court erred in finding the mandamus petition arose from Kaufman's protected conduct, as the activities that form the basis for the petition's causes of action are all acts or omissions of the Board.  That Kaufman's administrative appeal preceded or even triggered the events leading to the petition's causes of action against the Board did not mean that the petition arose from Kaufman's protected conduct within the contemplation of the anti-SLAPP law.  Accordingly, we reverse the anti-SLAPP order and the related fee award.

FACTUAL AND PROCEDURAL BACKGROUND

We limit our recitation of facts to those relevant to our decision.[3]

A. First Categorical Exemption

In 2017, appellants filed an application with the Planning Department to remodel and expand a single-family home located on Green Street in San Francisco (the project).  The Planning Department determined that the

---

[1]    The acronym SLAPP stands for " 'strategic litigation against public participation.' " (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 85 & fn. 1 (*Navellier*).

[2]    Further section references are to the Code of Civil Procedure unless specified otherwise.

[3]    Appellants request judicial notice of various records filed in the proceedings below and in another action.  We deferred consideration of the request until consideration of the merits of this appeal, and we now deny it, as the proffered material is unnecessary to our decision. (*City of Emeryville v. Cohen* (2015) 233 Cal.App.4th 293, 312, fn. 13.)

2

project was categorically exempt from environmental review under the California Environmental Quality Act (Pub. Res. Code, §§ 21000 et seq.) (CEQA).

Neighbors of the project requested that the Planning Commission exercise its powers of discretionary review and disapprove the project. They also appealed the categorical exemption decision to the Board, claiming the project should not be exempt from CEQA because there was contaminated soil at the location and the project would block light, air, and views to and from Kaufman's neighboring property (the historically significant Coxhead House) and undermine its foundation.

The Board conditionally reversed the categorical exemption determination, finding there was substantial evidence that the project may result in substantial adverse impacts to the historic significance of Kaufman's neighboring property that had not been sufficiently addressed in the categorical exemption for the project.

**B. Second Categorical Exemption**

Appellants submitted a revised application, and the Planning Department issued a second categorical exemption in June 2018. However, the Planning Department later reversed itself and rescinded the second categorical exemption. Appellants appealed, but the Board declined to hear the appeal.

**C. Mitigated Negative Declarations**

After conducting an initial study of the project and determining that the potential environmental impacts were less than significant, the Planning Department issued a preliminary mitigated negative declaration in June 2019. The preliminary mitigated negative declaration set forth mitigation

measures to ensure the security and stability of the project site and adjacent historic resources.

Kaufman appealed the preliminary mitigated negative declaration to the Planning Commission. In 2020, the Planning Commission denied Kaufman's appeal and adopted a final mitigated negative declaration.

**D. Kaufman's Appeal to the Board**

Kaufman then appealed the final mitigated negative declaration to the Board. The Board reversed the Planning Commission's decision upholding the final mitigated negative declaration and directed the Planning Department to conduct further study on slope stability and potential impacts to the structural integrity of Kaufman's property and to analyze and apply appropriate mitigation measures.

**E. Appellants' Petition for Writ of Mandamus**

Appellants filed a petition for writ of mandamus against the City and County of San Francisco, Planning Commission, Planning Department, and Board (collectively the City). The petition named Kaufman as a real party in interest and identified him as "the appellant to the underlying administrative appeal."

In the petition, appellants alleged that the City "repeatedly and unlawfully obstructed and delayed taking action on the [p]roject for years, instead yielding to political pressure exerted by members of the Board and well-connected neighbors who oppose the [p]roject." According to the petition, the Board denied the project "in favor of the neighbors' unsubstantiated arguments"; "failed to make any findings in support of its denial"; and "directed its *clerk* 'to prepare findings specifying the basis for its decision' after the fact. To date, no such findings have been made." The petition further alleged on information and belief that "the neighbors who oppose the

4

[p]roject are politically well-connected and are supported by members of the Board in their opposition to the Project," and that "certain neighbors who filed [discretionary review] requests made political donations to" members of the Board.

In the first cause of action for writ of mandate under section 1085 and/or 1094.5 and CEQA, the petition alleged that in reversing the Planning Commission's approval of the final mitigated negative declaration, "the Board failed to make any findings supporting its reversal, and instead directed its clerk to make findings for it after the fact. Because there are no findings in the record supporting its reversal of the [mitigated negative declaration], the Board failed to proceed in the manner required by law and/or there is no substantial evidence that the conditions attached to the adoption of the [mitigated negative declaration] are insufficient to mitigate the potential [p]roject impacts (if any)." Appellants further alleged that any evidence that was contrary to the Planning Department's findings of less-than-significant environmental impacts "was unsubstantiated, uncredible, and/or speculative argument from opposing neighbors." "Thus, there is no substantial evidence supporting a fair argument that a significant environmental effect may occur as a result of the [p]roject, and the Board's decision on the [mitigated negative declaration appeal] therefore must be reversed."

In the second cause of action for writ of mandate under section 1085 and/or 1094.5 and Government Code section 65905.5, appellants alleged the project is a proposed housing development project within the meaning of Government Code section 65905.5, which provides that when a project complies with all applicable, objective general plan and zoning standards in effect at the time an application is deemed complete, agencies " 'shall not conduct more than five hearings pursuant to [that section], or any other law,

5

ordinance, or regulation requiring a public hearing in connection with the approval of that housing development project.' " Appellants alleged the project was consistent with applicable, objective general plan and zoning standards in effect when the project was deemed complete in 2017, but the City conducted more than five hearings on the project.

In the petition's prayer for relief, appellants requested "a writ of mandate or other appropriate relief, including an injunction, declaration, and/or order, reversing the Board's decision to grant the [mitigated negative declaration appeal] and deny the [p]roject and remanding the [p]roject to the Board for approval." Appellants also sought costs of suit and reasonable attorney fees under "Gov. Code §§ 1021.5 and/or 800."[4]

**F. Kaufman's Anti-SLAPP Motion**

Kaufman filed an anti-SLAPP motion, contending that the petition arose from his protected activity of appealing the final mitigated negative declaration to the Board, and that appellants' claims lacked minimal merit because the Board's decision was based on substantial evidence that the project may have adverse environmental impacts requiring an environmental impact report; there is no cause of action for delay in the City's CEQA findings; Government Code section 65905.5 exempts CEQA actions from its five-hearing limit; and the requisite five hearings had not yet occurred.

The City filed a responsive brief in which it took "no position with respect to the anti-SLAPP claims stated in [Kaufman's] motion" but

---

[4] The citation to Government Code section 1021.5 appears to be an error and is more likely a reference to section 1021.5 of the Code of Civil Procedure, which provides that attorney fees may be awarded to the prevailing party "in any action which has resulted in the enforcement of an important right affecting the public interest" under specified circumstances.

6

concurred with Kaufman's positions on the merits of the "[CEQA] and Housing Crisis Act claims advanced in the [p]etition."

In opposition, appellants argued that Kaufman did not meet his threshold burden to show that the petition arises from protected activity because the petition arose not from Kaufman's appeal to the Board, but from the Board's decision. Appellants further argued that their claims met the minimal merit standard, and that the anti-SLAPP motion was frivolous and justified the imposition of sanctions against Kaufman.

The trial court granted the anti-SLAPP motion, finding that the petition arose from Kaufman's protected act of filing the administrative appeal, and that the claims in the petition lacked minimal merit. Appellants timely appealed the anti-SLAPP order in case No. A162859.

The trial court also found Kaufman was entitled to fees as the prevailing defendant on the anti-SLAPP motion and awarded him $219,269.25 in total fees. Appellants timely appealed the fee order in case No. A163639.

We consolidated the appeals for purposes of briefing, argument, and decision.

## DISCUSSION

### A. Anti-SLAPP Motion

Section 425.16 authorizes a special motion to strike "a cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." (§ 425.16, subd. (b)(1).) The anti-SLAPP law "allows defendants to request early judicial screening of legal claims targeting free speech or petitioning activities" (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 880–881

7

(*Wilson*)), and its provisions must be construed broadly (§ 425.16, subd. (a)). The anti-SLAPP law applies to various types of claims (e.g., *Navellier*, *supra*, 29 Cal.4th at pp. 89, 92–93 [breach of contract and fraud]); *CKE Restaurants, Inc. v. Moore* (2008) 159 Cal.App.4th 262, 265 [declaratory relief]), including, "in an appropriate case, a petition for mandamus" (*San Ramon Valley Fire Protection Dist. v. Contra Costa County Employees' Retirement Assn.* (2004) 125 Cal.App.4th 343, 353 (*San Ramon*)).

Resolution of an anti-SLAPP motion involves a two-prong inquiry. The first prong requires that the moving defendant make a prima facie showing that the challenged claim or claims arise from the defendant's constitutionally protected free speech or petition rights. (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 381–382, 396 (*Baral*).) If the moving party meets its burden, then under the second prong of the inquiry, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success. (*Id.* at p. 384.) If the moving party fails to satisfy the first prong, the motion is properly denied without proceeding to second prong. (*San Ramon*, *supra*, 125 Cal.App.4th at p. 357.) A prevailing defendant on a special motion to strike "shall be entitled to recover" attorney fees and costs, while a prevailing plaintiff may be entitled to attorney fees and costs if the court finds that the anti-SLAPP motion was "frivolous or is solely intended to cause unnecessary delay." (§ 425.16, subd. (c)(1).)

We review an order on an anti-SLAPP motion de novo. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3.)

There is no dispute that Kaufman's act of appealing the Planning Commission's decision to the Board constituted petitioning activity that generally is protected under the anti-SLAPP law. (See § 425.16, subd. (e)(1), (2) [any written or oral statement made before legislative, executive, or

8

judicial proceeding or in connection with issue under consideration or review by legislative, executive, or judicial body]; *Midland Pacific Building Corp. v. King* (2007) 157 Cal.App.4th 264, 272 [submissions to planning commission and city council in course of official proceeding were protected petitioning activities].)  The dispute here concerns whether appellants' mandamus petition *arises from* Kaufman's petitioning activity.  We conclude it does not.

"A claim arises from protected activity when that activity underlies or forms the basis for the claim.  [Citations.]  Critically, 'the defendant's act underlying the plaintiff's cause of action must itself have been an act in furtherance of the right of petition or free speech.'  [Citations.]  . . . .  '[T]he focus is on determining what 'the defendant's activity [is] that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning.' " (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1062–1063, italics omitted (*Park*).)  In enacting the anti-SLAPP law, the Legislature "had in mind *allegations of protected activity that are asserted as grounds for relief.*  The targeted claim must amount to a 'cause of action' in the sense that it is alleged to justify a remedy." (*Baral*, *supra*, 1 Cal.5th at p. 395.)  Thus, the California Supreme Court has instructed that "in ruling on an anti-SLAPP motion, courts should consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability." (*Park*, at p. 1063.)

*Park* is instructive.  There, the Supreme Court held that a discrimination claim brought by a university professor who was denied tenure did not arise from the university's protected statements and communications during the official tenure process, but rather, from the university's unprotected act of denying tenure purportedly based on the

9

plaintiff's national origin. (*Park*, *supra*, 2 Cal.5th at p. 1068.) Employing an elements-focused approach, *Park* held that the elements of the discrimination claim "depend not on the grievance proceeding, any statements, or any specific evaluations of him in the tenure process, but only on the denial of tenure itself and whether the motive for that action was impermissible." (*Id.* at pp. 1063, 1068.) The university's protected statements "may supply evidence of animus, but that does not convert these statements themselves into the basis for liability." (*Id.* at p. 1068.)

Also instructive is *City of Cotati v. Cashman* (2002) 29 Cal.4th 69 (*City of Cotati*), where the Supreme Court held that a state court declaratory relief action filed by the City of Cotati alleging a controversy with mobilehome park owners over the constitutionality of a rent stabilization ordinance did not arise out of protected activity *even though* it was filed *in response to* the owners' prior federal court declaratory relief action challenging the constitutionality of the same ordinance. (*City of Cotati*, at pp. 71–72.) As the court explained, "the mere fact an action was filed after protected activity took place does not mean it arose from that activity. The anti-SLAPP statute cannot be read to mean that 'any claim asserted in an action which arguably was filed in retaliation for the exercise of speech or petition rights falls under section 425.16, whether or not the claim is *based on* conduct in exercise of those rights.'" (*City of Cotati*, at pp. 76–77.) "[A] claim filed in response to, or in retaliation for, threatened or actual litigation is not subject to the anti-SLAPP statute simply because it may be viewed as an oppressive litigation tactic. [Citation.] That a cause of action arguably may have been triggered by protected activity does not entail that it is one arising from such." (*Id.* at p. 78.)

Here, the petition asserts two causes of action for mandamus. " 'Generally, a writ of ordinary mandate will lie when (1) there is no plain, speedy and adequate alternative remedy, (2) the public official has a legal and usually ministerial duty to perform and (3) the petitioner has a clear and beneficial right to performance.' " (*Cape Concord Homeowners Assn. v. City of Escondido* (2017) 7 Cal.App.5th 180, 189.) The factual allegations of the petition that supply these elements are the Board's failure to make factual findings in support of its decision to reverse the final mitigated negative declaration; the lack of substantial evidence supporting the Board's decision; and the Board's convening of more than five hearings on the project—all acts or omissions of *the Board*. Although the petition names Kaufman as a real party in interest and alleges he filed the appeal that led to the Board's decision, the petition seeks no coercive relief against Kaufman, and the allegations of his petitioning activity do not supply any of the elements of the asserted causes of action. Accordingly, the petition does not arise from Kaufman's petitioning activity. (*Park*, *supra*, 2 Cal.5th at p. 1063.)

It makes no difference that Kaufman's appeal of the final mitigated negative declaration directly preceded or even triggered the events leading to the petition's causes of action against the Board. "A claim may be struck under the anti-SLAPP statute 'only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted.' " (*Wilson, supra*, 7 Cal.5th at p. 890.) "That a cause of action arguably may have been triggered by protected activity does not entail that it is one arising from such." (*City of Cotati, supra*, 29 Cal.4th at p. 78.) Thus, at most, the allegation of Kaufman's protected activity "merely provide[s] context, without supporting a claim for recovery," but such contextual allegations are not subject to being

11

stricken under the anti-SLAPP statute. (*Baral*, *supra*, 1 Cal.5th at p. 394; see also *Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1012 [concluding it was appropriate to consider whether the plaintiff's "various allegations supply the elements of a retaliation claim or merely provide context"].)

Appellants and the City both cite *Rudisill v. California Coastal Com.* (2019) 35 Cal.App.5th 1062 (*Rudisill*) as supporting their respective positions. In *Rudisill*, the petitioners filed a mandamus petition contesting building permit decisions by the California Coastal Commission (Coastal Commission) and the City of Los Angeles, naming as real parties in interest the persons and entities who had applied for the permits. (*Id.* at p. 1068.) The petition alleged that the Coastal Commission violated applicable laws by processing permits for the demolition of existing structures and for new construction separately rather than as a single application, and that the real parties in interest filed permits for demolition and new construction in such close temporal proximity as to result in " 'a piecemealing of the demolition and the new construction.' " (*Ibid.*)[5] The trial court denied the real parties in interest's anti-SLAPP motion and imposed attorney fees on them for filing a frivolous motion. (*Id.* at p. 1069.) On appeal from the fee award, the appellate court reversed, concluding the anti-SLAPP motion was not frivolous because the real parties in interest could have reasonably concluded (1) they were " 'person[s]' " against whom a cause of action was asserted within the meaning of the anti-SLAPP statute; and (2) the petition's "claim for attorney

---

[5] The petition also alleged that one of the real parties in interest "participated in a below market sale involving related parties that 'may have been done in order to evade the requirements to treat the permits for the Grand Blvd Unified Development as one project.' " (*Rudisill*, *supra*, 35 Cal.App.5th at p. 1073.)

12

fees," which was not limited to a fee award against the government respondents, was a claim asserted against them that arose from their protected conduct of filing permits. (*Rudisill*, at pp. 1066, 1075.)

For its part, the City relies on portions of the *Rudsill* decision in which the court analyzed the statutory phrase from section 425.16, subdivision (b)(1) "[a] cause of action against a person" (not at issue here) and generally held that the real parties in interest reasonably concluded the petition asserted a claim against them arising from their protected conduct. But as appellants point out, in navigating the latter issue, *Rudisill* first observed that "[t]he trial court was on solid ground in concluding that the mandamus relief Petitioners sought against the Commission and the City did not arise from Real Parties in Interest's petitioning conduct"—i.e., their filing of applications for building permits—because the petitioning conduct "was not a necessary part of Petitioners' claim that the governmental entities themselves acted unlawfully." (*Rudisill*, *supra*, 35 Cal.App.5th at p. 1075.) This merits assessment, relevant to *Rudisill*'s evaluation of whether the anti-SLAPP motion was frivolous, reinforces our conclusion that Kaufman's petitioning conduct was not a necessary part of appellants' mandamus claims against the City.

In a separate part of its analysis that neither the City nor Kaufman cited in their briefs, *Rudisill* held that the real parties in interest reasonably viewed the petition's "claim for attorney fees" as a claim arising from their petitioning activity. (*Rudisill*, *supra*, 35 Cal.App.5th at p. 1072.) On this score, *Rudisill* reasoned as follows. A real party in interest who actively participates in litigation may be considered an "opposing part[y]" for purposes of fee shifting under section 1021.5. (*Id.* at pp. 1072–1073, citing section 1021.5 and *Mejia v. City of Los Angeles* (2007) 156 Cal.App.4th 151,

13

160.) Because the petition at issue alleged that the real parties in interest were "participants in regulatory missteps or outright wrongdoing" and were therefore "at least partially responsible for the alleged improper 'piecemealing' of the challenged development because of the permits that they filed," it was reasonable for the real parties in interest to believe that the petition asserted claims for relief against them that arose from their protected conduct. (*Rudisill*, at pp. 1072–1073, 1075.)

Assuming, without deciding, that *Rudisill* correctly concluded the anti-SLAPP law applies to a request for attorney fees contained in a prayer for relief (but see *Coretronic Corp. v. Cozen O'Connor* (2011) 192 Cal.App.4th 1381, 1392 [anti-SLAPP statute does not apply to remedies sought in prayer for relief]), we conclude *Rudisill*'s attorney fee rationale does little to assist our analysis. First, as mentioned, neither the City nor Kaufman relied on this portion of *Rudisill* in their briefs or advanced a similar argument based on the petition at issue here. Second, our review of the petition discloses no specific factual allegations that Kaufman was at least partially responsible for the challenged practices of the Board that gave rise to this litigation such that Kaufman could be liable for section 1021.5 attorney fees under *Rudisill*'s rationale. Instead, the petition's sole allegation regarding Kaufman is that he filed the underlying administrative appeal.[6]

---

[6] The petition alleges that anonymous "neighbors" engaged in "political pressure" on the Board, made political donations to Board members, engaged in a "campaign of opposition to the [p]roject," and made "unsubstantiated arguments" before the Planning Commission. But the petition does not allege that Kaufman was one of those neighbors, and Kaufman did not argue or submit evidence below that he understood these references to apply to him. Kaufman cited only his administrative appeal as the protected activity allegedly targeted by the petition. That said, we express no opinion on the ultimate question of whether Kaufman could be liable to appellants for section 1021.5 attorney fees at the conclusion of this litigation.

Next, Kaufman and the City contend it was unnecessary for appellants to name Kaufman in the petition because he is not a necessary or indispensable party within the meaning of section 389,[7] nor is he among the persons deemed real parties in interest under certain provisions of CEQA (see Pub. Res. Code, § 21065, subds. (b) [person receiving contracts, grants, subsidies, loans, or other assistance from public agency], (c) [person receiving lease, permit, license, certificate or other entitlement by public agency]; § 21167.6.5, subd. (a) [petitioner shall name as real party in interest persons identified by public agency in notice under § 21108 or § 21152 or, if no notice filed, persons in § 21065, subds. (b) or (c)]). From this, Kaufman and the City conclude that the *only* reason Kaufman was named a real party in interest was because he appealed the Planning Commission's approval of the final mitigated negative declaration to the Board. In response, appellants argue that (1) the City and Kaufman have already taken a contrary position that Kaufman is an interested and/or necessary party to this case, and they are judicially estopped from claiming otherwise; (2) Kaufman has already demonstrated his interest in the subject matter of this case by filing a separate court action challenging an administrative decision on the same project; and (3) appellants offered to dismiss Kaufman as a real party in interest if he disclaimed any interest in the proceeding and the City agreed to adequately represent his interests, but neither Kaufman nor the City agreed to the proposal.

---

[7] Under section 389, a person "shall" be joined as a party in an action if (1) complete relief cannot be accorded among those already parties in his or her absence or (2) he or she claims an interest in the subject of the action and is so situated that disposition in his or her absence may, as a practical matter, impair or impede his or her ability to protect that interest, or leave any of the parties subject to a substantial risk of multiple or inconsistent obligations. (§ 389, subd. (a).)

15

We need not wade into this thicket. Even assuming for the sake of argument that it was unnecessary for appellants to name Kaufman as a real party in interest, it does not follow that their doing so subjected their petition to application of the anti-SLAPP law. The anti-SLAPP law does not target unnecessary claims, but those that arise from protected conduct. (§ 425.16, subd. (b)(1); *Park, supra*, 2 Cal.5th at p. 1063.) Consequently, the pertinent inquiry is whether Kaufman's petitioning activity is itself the wrong complained of in the petition or the basis for any relief claimed therein. (See *Wilson, supra*, 7 Cal.5th at p. 884; *Park*, at p. 1063; *Baral, supra*, 1 Cal.5th at p. 395.) As we have explained, it is not.[8]

---

[8] If Kaufman is not a necessary party as he contends, then it stands to reason there is no need for him to actively participate in the proceedings, thereby undercutting another premise of *Rudisill*'s attorney fee rationale. Although Kaufman and the City suggest that Kaufman is being forced to defend the Board's decision, they are incorrect. Merely naming a person as the real party in interest in a mandamus petition does not compel that person to defend the litigation. It simply confers certain rights, i.e., to be served with the petition, to file an answer or other pleadings, and to be heard before the court issues a peremptory writ. (*Inland Counties Regional Center, Inc. v. Office of Administrative Hearings* (1987) 193 Cal.App.3d 700, 704; *Sonoma County Nuclear Free Zone '86 v. Superior Court* (1987) 189 Cal.App.3d 167, 173.) A real party in interest may simply decline to participate. (See, e.g., *Bolsa Chica Land Trust v. Superior Court* (1999) 71 Cal.App.4th 493, 500–501, 517 [attorney fees awarded only against two real parties in interest who actively participated in litigation], overruled on other grounds in *Dhillon v. John Muir Health* (2017) 2 Cal.5th 1109, 1116, fn. 2; and *Washburn v. City of Berkeley* (1987) 195 Cal.App.3d 578, 582, 591, 593 [awarding proportioned attorney fees against one of nine named real parties in interest who opposed mandamus petition against city]; see also *Harris v. Alcoholic Beverage Control Appeals Board* (1966) 245 Cal.App.2d 919, 923 [real party in interest who did not participate in trial court still had right to appeal judgment].)

16

The remaining case authorities cited by the City and Kaufman in support of the trial court's decision are distinguishable and do not compel a different conclusion.

In *Levy v. City of Santa Monica* (2004) 114 Cal.App.4th 1252 (*Levy*), the plaintiffs sought declaratory and injunctive relief and damages against the City of Santa Monica and a city council member (collectively the city defendants), alleging a controversy over whether a playhouse on the plaintiffs' property complied with building regulations. (*Id.* at pp. 1256–1257.) In one of their causes of action, the plaintiffs sought a declaratory judgment and a permanent injunction precluding the city defendants from discussing the playhouse matter with planning department staff. (*Id.* at p. 1257.) The complaint named the plaintiffs' neighbor as a real party in interest and alleged that she had complained to the city about the playhouse. (*Id.* at p. 1256.) *Levy* held that the city defendants met their initial burden under the anti-SLAPP law because the complaint arose from their constitutionally protected speech (i.e., speaking with city planning department employees on behalf of a constituent to inquire about the playhouse) and sought to enjoin such communications. (*Id.* at pp. 1255, 1258–1259.)

Unlike the instant matter, the anti-SLAPP movant in *Levy* was the government, not the real party in interest. Thus, *Levy* did not actually hold that naming the neighbor as a real party in interest triggered the protections of the anti-SLAPP law as to her. True, *Levy* remarked that the neighbor's complaint to the city was "constitutionally protected speech" (*Levy*, *supra*, 114 Cal.App.4th at pp. 1258–1259), but this statement was unnecessary to the court's decision that the complaint arose from the city defendants' protected conduct. As to those parties, *Levy* soundly concluded the first prong

17

was met, as the plaintiffs sought a declaratory judgment and a permanent injunction precluding city council members from their protected acts of discussing the playhouse matter with planning department staff. (*Id.* at p. 1257.) Although *Levy* predated *Baral*, these allegations met both *Park*'s elements-based approach and *Baral*'s formulation that the allegations of protected activity must be asserted as grounds for relief. Here, in contrast, the petition does not meet the *Park* elements test or any other formulation articulated by the California Supreme Court in recent years for determining whether a claim arises from protected activity.

After the conclusion of briefing, Kaufman filed a notice of new authority citing *City of Oxnard v. Starr* (2023) 88 Cal.App.5th 313 (*Oxnard*). There, the City of Oxnard brought a declaratory relief action challenging two initiative measures passed by the electorate. (*Id.* at p. 318.) The complaint named as the sole defendant an Oxnard resident (Aaron Starr) who was a proponent of the measures and had gathered signatures for them. (*Ibid.*) Distinguishing *Park*, the appellate court held that the complaint arose from Starr's protected activity, as "Starr was sued because he is a proponent of two initiatives. Being a proponent of an initiative is an activity that clearly constitutes protected speech and petitioning." (*Id.* at p. 321.)

Notably, *Oxnard* contains no discussion as to whether Starr's advocacy or signature gathering were, themselves, the wrongs complained of in the complaint (*Wilson, supra,* 7 Cal.5th at p. 884), or whether such protected acts supplied the elements of the declaratory relief cause of action (*Park, supra,* 2 Cal.5th at p. 1063). From the *Oxnard* opinion, it appears the government sought to void the initiatives not because of anything Starr said or did, but on the ground that the measures were administrative rather than legislative in nature, and the electorate only had the power to initiate legislative acts.

18

(*Oxnard*, *supra*, 88 Cal.App.5th at pp. 320–321.)  In any event, as the *Oxnard* court acknowledged in its second prong analysis, the case involved unique circumstances in which, apart from Starr, there was "no other logical defendant" to sue for declaratory relief.  (*Id.* at p. 323 [observing that Starr had been conferred legal standing to defend the measures by both the language of the measures themselves and *Perry v. Brown* (2011) 52 Cal.4th 1116, 1152].)  Here in contrast, appellants brought a mandamus proceeding challenging particular acts and omissions of the City, making the City the "logical" respondent in this case.  As such, all of the petition's claims for relief were asserted against the City.  On this record, *Oxnard* is not controlling.

In sum, appellants' mandamus petition does not arise from Kaufman's protected petitioning activity because that conduct is not the wrong complained of; the allegations of such conduct do not supply any of the elements of appellants' causes of action; and the petitioning activity is not asserted as grounds for relief.  (*Wilson*, *supra*, 7 Cal.5th at p. 884; *Park*, *supra*, 2 Cal.5th at p. 1063; *Baral*, *supra*, 1 Cal.5th at p. 395.)  Thus, Kaufman failed to carry his initial burden on the anti-SLAPP motion, and the motion should have been denied.  (*San Ramon*, *supra*, 125 Cal.App.4th at p. 357.)  Furthermore, because it was error to find that Kaufman prevailed on his anti-SLAPP motion, the order granting Kaufman's motion for attorney fees must also be reversed and vacated.

### B. Frivolous Anti-SLAPP Motion

Appellants contend the anti-SLAPP motion was frivolous and sanctionable under section 425.16, subdivision (c).  Because the parties appear to agree that we may decide this issue in the first instance, we will reach the merits.  For the reasons below, we conclude the motion was not

frivolous or solely intended to cause unnecessary delay, and accordingly, we deny the request for sanctions.

Section 425.16, subdivision (c)(1), provides in pertinent part that "[i]f the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion, pursuant to Section 128.5." " 'Frivolous in this context means that any reasonable attorney would agree the motion was totally devoid of merit.' " (*L.A. Taxi Cooperative, Inc. v. The Independent Taxi Owners Assn. of Los Angeles* (2015) 239 Cal.App.4th 918, 932; see § 128.5, subd. (b)(2) [" 'Frivolous' means totally and completely without merit or for the sole purpose of harassing an opposing party"].)

As discussed, *Rudisill* held on facts procedurally similar to those here that an anti-SLAPP motion was not frivolous. Thus, a reasonable attorney could have relied on *Rudisill* to conclude that Kaufman's anti-SLAPP motion was not totally devoid of merit. Appellants provide no evidentiary basis for concluding the anti-SLAPP motion was brought solely for the purpose of harassment or delay. Accordingly, we conclude the anti-SLAPP motion was not frivolous, and we deny appellants' request for attorney fees and costs under section 425.16, subdivision (c).

## DISPOSITION

The orders granting Kaufman's anti-SLAPP motion and motion for attorney fees are reversed and vacated. On remand, the trial court is directed to enter a new order denying both motions. Appellants' request for attorney fees and costs under section 425.16, subdivision (c), is denied. Appellants shall recover their costs on appeal.

20

FUJISAKI, J.

WE CONCUR:

TUCHER, P.J.

PETROU, J.

Trial Court:        City & County of San Francisco Superior Court

Trial Judge:        Hon. Rochelle C. East

Counsel:        Zacks & Freedman, Ryan J. Patterson, and Emily Lowther Brough for Plaintiff and Appellant

David Chiu, City Attorney, Kristen Ann Jensen, Audrey Williams Pearson, and Lauren Skellen, Deputy City Attorneys for Defendants and Respondents

Lozeau Druty, Richard Toshiyuki Drury; and Law Office of Jonathan Weissglass, Jonathan David Weissglass for Real Party in Interest

*Durkin v. City and County of San Francisco* (A162859 & A163639)